**Philip DAVIS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, and Group Health Incorporated, Defendants.**

**No. 75 Civ. 3002.**

United States District Court,
S. D. New York.

June 11, 1976.

Bradley B. Davis, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., for defendants; Nathaniel L. Gerber, Asst. U. S. Atty., Borge Varmer, Regional Atty., Region II, New York City, Annette Blum, Asst. Regional Atty., Dept. of Health, Education and Welfare, Washington, D. C., of counsel.

## MEMORANDUM

LASKER, District Judge.

Philip Davis seeks a judgment declaring invalid certain hearing procedures established by the Secretary of the Department of Health, Education § Welfare (HEW) regarding disputed claims of medicare benefits under Title XVIII, Part B of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.* Specifically, Davis alleges that the procedures for the appointment of persons who conduct hearings as to disputed claims resulted, in his and in all cases, in the appointment of a biased hearing officer and, therefore, violate his rights under the Act and the due process clause. Davis moves for summary judgment. Defendants move to dismiss for lack of jurisdiction and failure to state a claim.

## I.

Under Part B of the Medicare program, persons who enroll pay monthly premiums, matched by federal contributions, and are entitled to insurance benefits for covered services. See 42 U.S.C. §§ 1395y(a)(1), 1395k.

The Act authorizes the Secretary of HEW to promulgate regulations governing eligibility and review of disputed claims. See 42 U.S.C. § 1395ff. A dissatisfied claimant obtains review of disputed Part B claims by filing a request for reconsideration. The Secretary of HEW is authorized by statute to enter into agreements with health insurance carriers to perform certain functions, including the determination of the amount of reimbursement due individual claimants. Group Health Incorporated (GHI), a defendant in this case, is the insurance carrier in charge of Davis' claims.

The Act sets forth the manner in which hearings of disputed Part B claims are to be conducted and provides in pertinent part:

"(3) Each such contract [between the carrier and the Secretary] shall provide that the carrier—

\*   \*   \*   \*   \*   \*

(C) will establish and maintain procedures pursuant to which an individual enrolled under this part will be granted *an opportunity for a fair hearing* by the carrier, in any case where the amount in controversy is $100 or more, when requests for payment under this part with respect to services furnished him are denied or are not acted upon with reasonable promptness or when the amount of such payment is in controversy."

42 U.S.C. § 1395u(b)(3)(C) (emphasis added)

Pursuant to the Statute, the Secretary of HEW promulgated regulations which establish the hearing procedures and provide:

"20 C.F.R. § 405. Hearing officer.

Any hearing provided for in this subpart shall be conducted by a hearing officer designated by the appropriate official of the carrier.

405.824 Disqualification of hearing officer.

A hearing officer shall not conduct a hearing in any case in which he is prejudiced or partial with respect to any party, or if he has any interest in the matter before him. Notice of any objection with respect to the hearing officer who will conduct the hearing shall be made by the objecting party at his earliest opportunity. The hearing officer shall consider such objection and shall at his discretion, withdraw. If the hearing officer withdraws, the appropriate official of the carrier shall designate another hearing officer to conduct the hearing. If the hearing officer does not withdraw, the objecting party may present his objections to the carrier for consideration at any time prior to the issuance of a decision. The carrier shall review the request and take appropriate action. The fact that a hearing officer is an employee of the carrier may not serve as a prima facie cause for disqualification."

Davis, a Medicare beneficiary enrolled in Part B, submitted claims to GHI, the carrier for his region, for the costs of renting and purchasing certain medical equipment. A number of the claims were disallowed and Davis requested a hearing on the disputed items which was scheduled for May 29, 1975. When the hearing convened Davis' representative appeared and objected to the lack of impartiality of the hearing officer on the ground that he was an employee of and had been appointed by the carrier, GHI. The hearing was then terminated without prejudice to its reopening for the consideration of the merits of Davis' claims.

## II.

*Procedural Aspects of Defendants' Motion to Dismiss*

### A.   *Alleged Lack of Jurisdiction*

Defendants argue that the complaint should be dismissed for lack of jurisdiction. Although Davis' complaint bases jurisdiction only on "Federal question: all of the

issues in dispute arise under the Medicare Law and the Constitution," his memorandum of law asserts jurisdiction under 28 U.S.C. §§ 1331, 1361 and 28 U.S.C. § 1346 as well.

■ However, it is unnecessary to determine whether jurisdiction exists under § 1331 or § 1346 because in any event jurisdiction lies under 28 U.S.C. § 1361. In *Frost v. Weinberger,* 515 F.2d 57 (2d Cir. 1975), the plaintiff, like Davis, asserted the right to a fair hearing. Judge Friendly, writing for the majority, held that the language of 28 U.S.C. § 1361, the mandamus statute, was "sufficiently broad [to encompass] a case like this where the sole issue is the type of hearing required." 515 F.2d at 62. *Accord, Martinez v. Richardson,* 472 F.2d 1121, 1125–26 (10th Cir. 1973); *Elliot v. Weinberger,* 371 F.Supp. 960, 967–68 (D.Hawaii 1974). Indeed, this case presents a clearer instance for mandamus jurisdiction because, unlike *Frost,* in this case the Secretary of HEW is *statutorily* obligated to ensure that the insurance carrier provides "an opportunity for a fair hearing," 42 U.S.C. § 1395u(b)(3) and the situation at hand thus more closely fits the traditional requirement for jurisdiction under § 1361 that the defendant have a clear duty to perform a non-discretionary act.

■ Moreover, as noted earlier, Davis contends that the Secretary's regulations violate not only the Act, but his rights under the due process clause. Mandamus is available for those who seek performance of constitutional duties. *Andujar v. Weinberger,* 69 F.R.D. 690(S.D.N.Y.1976); *Brown v. Schlesinger,* 365 F.Supp. 1204 (E.D.Va. 1973).

B. *Exhaustion of Administrative Remedies*

Defendants argue that Davis' complaint must be dismissed for failure to raise his objections before GHI, as provided in 20 C.F.R. § 405.824, cited above. That section states:

". . . If the hearing officer does not withdraw, the objecting party may present his objections to the carrier for consideration at any time prior to the issuance of a decision."

■ The contention is without merit because resort to administrative remedies is not required where the administrative agency, as here, is not empowered to grant the relief requested. See, e. g., *Wallace v. Lynn,* 507 F.2d 1186, 1189–90 (D.C.Cir.1974). The case at hand falls within that exception. Neither the hearing officer and the carrier, GHI, has authority to determine the constitutionality of the procedures they are directed to administer or whether those procedures conform to statutory requirements. Requiring Davis to await the hearing officer's decision or to appeal to the carrier would be an exercise in futility because he is not challenging his award under the health plan, but the procedures by which the amount is determined. *Frost v. Weinberger,* 375 F.Supp. 1312, 1320 (E.D.N.Y. 1974), *aff'd,* 515 F.2d 57 (2d Cir. 1975); *Morris v. Richardson,* 346 F.Supp. 494, 495 (N.D.Ga.1972).

C. *Three-Judge Court*

■ Defendants are incorrect in their claim that the determination of this case must be made by a three-judge court. A three-judge court is not required where, as here, the plaintiff requests solely declaratory, and not injunctive, relief. *Steffel v. Thompson,* 415 U.S. 452, 457 n. 7, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

III.

*Sufficiency of the Claims for Relief*

Davis contends that the regulations, which permit the carrier to appoint one of its own employees as a hearing officer, violate the underlying statute and the requirements of the due process clause.

As noted earlier, the statute provides that the carrier:

"(c) will establish and maintain procedures pursuant to which an individual enrolled under this part will be granted

an opportunity for a fair hearing by the carrier . . ." 42 U.S.C. § 1395u(b)(3)(C).

In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that an impartial decision maker was an essential ingredient of a constitutionally fair hearing. In discussing the criteria to be used to determine the requisite impartiality, the Court stated:

"We agree with the District Court that prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review." 397 U.S. at 271, 90 S.Ct. at 1022.

Section 6485.3 of the Part B Intermediary Manual, an HEW document which sets forth guidelines for carriers administering the Medicare Program and with which the carriers are obligated by contract to comply, provides:

"6485.3 Hearing Officer—The hearing is to be conducted by a competent, qualified and impartial official of the carrier. *The hearing officer is to be an individual who has not been involved in any way with the determination in question and has neither advised nor given consultation on any request for payment which is a basis for the hearing.* The hearing officer should be an attorney or other qualified individual with ability to conduct formal hearings and with some understanding of medical matters and terminology, and a thorough knowledge of the program and the regulations issued thereunder." (emphasis added)

Thus, in conformance with *Goldberg*, hearing officers do not participate in making the determination under review.

■ The mere fact that the hearing officer is employed the carrier does not render him constitutionally unacceptable. According to the affidavit of Theodore Shulman, Deputy Regional Director, Bureau of Health Insurance, Social Security Administration, who is responsible for assisting in the administration of the Medicare Program:

"¶ 9. The fair hearing officer authorized to hear disputed Part B Medicare claims pursuant to 42 U.S.C. 1395u(b)(3)(C) may be either an employee of the carrier or an individual unconnected with the carrier and employed on a consultant basis for the limited purpose of hearing disputed Part B Medicare claims. In either instance the officer's salary or employment is unrelated to the substance of his decisions or the amount of benefits paid as a result thereof. In this instance the fair hearing officer appointed to hear plaintiff's claim was a permanent employee and official of the carrier who has no involvement in the carrier's Medicare functions other than serving as a fair hearing officer."

No facts have been presented which suggest that the officer is motivated to rule in a particular manner and his employment by the carrier does not in itself offend the due process clause. As the Court of Appeals for this Circuit stated in *Lopez v. Henry Phipp Plaza South Inc.*:

"While we said in *Escalera v. N. Y. C. Housing Authority*, 425 F.2d [853] at 863, [2 Cir.] that a tenant facing eviction 'should be afforded the opportunity to present his side of the case in the presence of an impartial official . . . .' The opinion in no way indicated that an official was not 'impartial' simply because he was an officer of the Housing Authority." 498 F.2d 937, 944 (2d Cir. 1974) (Friendly, J.)

Nor, under the circumstances is GHI's dual responsibility for administering the program and resolving disputed claims constitutionally invalid. Neither GHI, nor any other carrier, has an incentive either to grant or deny awards. Reimbursement to the carrier under the Act does not vary according to the amounts of medicare awards it dispenses to participants. The affidavit of Shulman states:

"¶ 4. . . . the carrier receives advances of funds for making payments by it under Part B of Medicare and receives

payments of the cost of administration 42 U.S.C. § 1395u(c). The carrier receives no profit from its functions under Part B of Medicare."

It is true, as Davis notes, that two recent decisions by the District Court for the Eastern District of Missouri concluded that employees of a carrier are not impartial decision makers within the meaning of *Goldberg v. Kelly, supra. St. Louis University v. Blue Cross Hospital*, 393 F.Supp. 367 (E.D.Mo.1975); *Faith Hospital Service v. Blue Cross Hospital Service of St. Louis*, 393 F.Supp. 601 (E.D.Mo.1975). However, those decisions predate the Supreme Court's decision in *Winthrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) discussed below, and we believe that the decision of the Court of Appeals in *Lopez v. Henry Phipp Plaza South Inc., supra*, as well as *Larkin* lead to a contrary conclusion. The Supreme Court's decision in *Winthrow v. Larkin, supra*, strongly suggests that the combination of administrative and quasi-judicial functions in one body is not by itself constitutionally impermissible. In *Winthrow*, a physician sought to enjoin enforcement of a Wisconsin statute which authorized the state medical examining board to suspend licenses after holding its own hearing. Although the hearing was a full adversary proceeding, the board not only initiated the charges which could lead to suspension, but conducted its own investigation and rendered a decision based upon that evidence. The Supreme Court reversed the preliminary injunction against the medical board's procedures, finding it "quite unlikely that appellee would ultimately prevail on the merits of the due process issue." 421 U.S. at 46, 95 S.Ct. at 1464. The facts in the case at hand afford greater assurance of impartiality than in *Larkin* because the hearing officer here, unlike the board in *Larkin*, neither conducts the initial review nor makes the preliminary determination. Davis argues that *Larkin* and other cases cited by defendants, (e. g., *Fuentes v. Roher*, 519 F.2d 379 (2d Cir. 1975)) are distinguishable because, in contrast to those cases, there is no right here to appeal the hearing officer's determination to a neutral body. The argument is unpersuasive. Neither in *Goldberg v. Kelly, supra*, nor in subsequent cases has the Supreme Court held that the guarantees of due process necessarily include the right to an appeal. The determination whether a hearing officer is impartial is a matter independent of the right to appeal. Having determined that the procedure under question does not result in the hearing officer being biased, the existence or lack of appeal does not logically affect that decision.

Finally, Davis' contention that the regulation at issue unconstitutionally delegates judicial authority is without merit. Davis cites only *Carter v. Carter Coal Co.*, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936) and *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 49 L.Ed. 1570 (1935) to support this argument, but those cases dealt with delegation of legislative, not judicial powers and the right of administrative agencies to hold hearings in order to determine contested agency decisions is beyond question.

For the reasons set forth above the complaint is dismissed for failure to state a claim.

It is so ordered.