Opinion by Judge GRABER; Dissent by Judge IKUTA.
OPINION
GRABER, Circuit Judge:
In this civil rights action under 42 U.S.C. § 1983, Plaintiff William Cecil Thornton brings a constitutional challenge to the imposition and enforcement of two conditions of his parole: a residency restriction and a requirement that he submit to electronic monitoring using a Global Positioning System (“GPS”) device. Citing Preiser v. Rodriguez, 411 U.S. 475, 489-90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and Heck v. Humphrey, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the district court concluded that habeas corpus provided the exclusive federal remedy for Plaintiffs claims and dismissed the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.
The Supreme Court has not directly considered the application of the Heck doctrine to § 1983 actions that challenge conditions of parole. Among the courts of appeals, only the Seventh Circuit has done so, in Drollinger v. Milligan, 552 F.2d 1220 (7th Cir.1977), and Williams v. Wisconsin, 336 F.3d 576 (7th Cir.2003). Consistent with Supreme Court precedent and that of our sister circuit, we hold that such an action is not barred by Heck if it is not a collateral attack on either the fact of a parolee’s confinement as a parolee or the parolee’s underlying conviction or sentence. Because we conclude that Petitioner’s action is not such an attack, we reverse and remand.
BACKGROUND
California’s Sex Offender Registration Act' requires certain convicted sex offenders to register with law enforcement officials in the communities in which they reside. CaLPenal Code §§ 290(c), 290.005(a). California’s Sexual Predator Punishment and Control Act of 2006 — also known as Jessica’s Law or Proposition 83 — imposes several requirements that apply to parolees who, as sex offenders, are subject to that duty to register. One of those requirements is a residency restriction according to which a person who is required to register may not “reside within 2000 feet of any public or private school, or park where children regularly gather.” Id. § 3003.5(b). Another requirement is that any person who is convicted of a “registerable sex offense” as defined by section 290(c) — a section which enumerates various sex offenses under California law — must submit to electronic monitoring by a GPS device, either for the duration of that person’s parole or for life. Id. §§ 3000..07(a), 3004(b). The state’s Department of Corrections and Rehabilitation (“the Department”) also has discretionary authority to require any parolee to submit to electronic monitoring. See id. § 3010(a) (providing that “the [Department] may utilize continuous electronic monitoring to electronically monitor the whereabouts of persons on parole”).
*1258 In 2011, a California Trial court ruled that section 300S.5(b)’s residency restriction, when applied to all registered sex offenders as a “blanket” parole condition, was unconstitutional. In re Taylor, 147 Cal.Rptr.3d 64, 67-68 (Ct.App.2012). The appellate court affirmed the lower court’s order, which prohibited the “blanket enforcement of the residency restriction”; but the court also held that the Department “may, after consideration of a parolee’s particularized circumstances, impose a special parole condition that mirrors section 3003.5(b) or one that is more or less restrictive.” Id. at 83-84.[1]
In 1987, Plaintiff pleaded guilty in Tennessee to sexual battery. In 2006, he was convicted in California of buying or receiving stolen property and was sentenced to a 16-month term of imprisonment. California law requires a period of parole or supervised release following such a prison term, CaLPenal Code § 3000, and when Plaintiff was released in June 2008, he received a three-year parole term. Citing Plaintiffs previous Tennessee offense, the Department imposed, as parole conditions, a GPS monitoring requirement (pursuant to section 3010 of the Penal Code) and a residency restriction prohibiting him from living within 2000 feet of schools or parks where children gather (pursuant to section 3003.5(b)). Plaintiff was later convicted of robbery and was sentenced to a three-year prison term for that offense, pursuant to California Penal Code section- 1170. Again, California law required a term of parole to follow his sentence. CaLPenal Code § 3000. While he was in prison, the Department issued new parole conditions that would apply upon his release. Those conditions included the same GPS monitoring requirement and residency restriction.
During his second prison term, Plaintiff filed this action under 42 U.S.C. § 1983, seeking both monetary and injunctive relief. He alleges that the Department violated his constitutional rights by imposing the GPS monitoring requirement and residency restriction as parole conditions and by enforcing those conditions in an arbitrary or discriminatory manner. The district court reasoned that, as a parolee, Plaintiff was “in custody” within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2254. It further reasoned that, under the Heck doctrine, a habeas petition is the exclusive means by which Plaintiff can challenge a condition of his parole. Accordingly, the district court dismissed the claim.
Plaintiff timely appeals. We review de novo the legal issues presented here. Barker v. Riverside Cnty. Office of Educ., 584 F.3d 821, 824 (9th Cir.2009).
DISCUSSION
A. Immunity
Plaintiffs claims against the Governor, the Secretary of Corrections, and a Parole Unit Supervisor are limited to injunctive relief. See Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citing Eleventh Amendment considerations and holding that § 1983 does not permit suits for damages against states); Doe v. Lawrence Livermore Nat’l Lab., 131 F.3d 836, 839 (9th Cir.1997) (holding that “state officials sued in their official capacities are not ‘persons’ within the meaning of § 1983” except when “sued for prospective injunctive relief”). Neither absolute nor qualified immunity bars Plaintiffs claims *1259 against those defendants. See, e.g., Buckwalter v. Nev. Bd. of Med. Exam’rs, 678 F.3d 737, 747 (9th Cir.2012) (“Absolute immunity is not a bar to injunctive or declaratory relief.”); Vance v. Barrett, 345 F.3d 1083, 1091 n. 10 (9th Cir.2003) (“[A] defense of qualified immunity is not available for prospective injunctive relief.”).
Absolute immunity does bar Plaintiffs claims for damages against his parole officers for imposing allegedly unconstitutional parole conditions. We have held that absolute immunity “extend[s] to parole officials for the ‘imposition of parole conditions’ ” because that task is “integrally related to an official’s decision to grant or revoke parole,” which is a “quasi-judicial” function. Swift v. California, 384 F.3d 1184, 1189 (9th Cir.2004) (quoting Anderson v. Boyd, 714 F.2d 906, 909 (9th Cir.1983)). Both parole conditions currently in effect were imposed through particularized and discretionary decisions by parole officers. The GPS condition was imposed pursuant to the Department’s discretionary authority under section 3010 of the California Penal Code,[2] and the residency restriction “mirrors” section 3003.5(b), which, as interpreted by the California courts, permits such a condition only “after consideration of a parolee’s particularized circumstances.” Taylor, 147 Cal.Rptr.3d at 83-84. Accordingly, the parole officers are absolutely immune with respect to Plaintiffs claims for damages arising from the imposition of those conditions.
Absolute immunity does not extend, though, to Plaintiffs claim that the parole officers enforced the conditions of his parole in an unconstitutionally arbitrary or discriminatory manner. Parole officers’ “immunity for conduct arising from their duty to supervise parolees is qualified.” Anderson, 714 F.2d at 910. Plaintiffs allegation that the officers enforced the residency restriction against him but not against similarly situated parolees relates to the manner in which Defendants implemented that condition — an element of their supervisory function. Absolute immunity therefore does not apply to Plaintiffs enforcement — based claim. However, the district court also dismissed this claim as barred by qualified immunity. On appeal, Plaintiff does not challenge that ruling except to the extent that it bars him from pursuing injunctive relief. Because qualified immunity does not bar' injunctive relief, Vance, 345 F.3d at 1091, Plaintiff may assert his non-monetary claim arising from the allegedly discriminatory enforcement of his parole conditions.
B. Heck Doctrine
With respect to his claims for injunctive relief, the question remains whether Plaintiff appropriately brought those claims under § 1983 instead of through a petition for habeas corpus.
Persons subject to state custody generally “have two potential avenues to remedy violations of their federal constitutional rights: a habeas petition under 28 U.S.C. § 2254, and a civil suit under 42 U.S.C. § 1983.” Osborne v. Dist. Atty’s Office, 423 F.3d 1050, 1053 (9th Cir.2005) (citing Heck, 512 U.S. at 480, 114 S.Ct. *1260 2864). In Preiser, the Supreme Court addressed “ ‘the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus,’ ” Docken v. Chase, 393 F.3d 1024, 1027 (9th Cir.2004) (quoting Preiser, 411 U.S. at 500, 93 S.Ct. 1827), and held that § 1983 implicitly excludes from its coverage claims that lie “within the core of habeas corpus,” Preiser, 411 U.S. at 487-88, 93 S.Ct. 1827.[3] Thus, a person who is in state custody may not use § 1983 to challenge “the very fact or duration of ... confinement” by seeking “a determination that he is entitled to immediate release or a speedier release from that imprisonment” — for example, an injunction requiring prison officials to grant good-time credits that would shorten his prison term. Id. at 499-500, 93 S.Ct. 1827. In Heck, the Court elaborated on the exception set forth in Preiser, holding that a state prisoner may not maintain a § 1983 claim for damages if “a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence” with respect to a prior judgment that has not been nullified previously. Heck, 512 U.S. at 484, 487, 114 S.Ct. 2364.
Not all claims that are cognizable in habeas are precluded from § 1983’s scope under that standard; rather, there are “instances where the same constitutional rights might be redressed under either form of relief.” Wolff v. McDonnell, 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); see also Osborne, 423 F.3d at 1055 (rejecting “the notion that a claim which can be brought in habeas must be brought in habeas”).[4] Thus, the fact that a § 1983 plaintiff is “in custody” and therefore may file a habeas petition challenging the unlawfulness of that custody does not, by itself, determine whether the § 1983 claim is available. Instead, a claim that meets the statutory criteria of § 1983 may be asserted unless its success would release the claimant from confinement or shorten its duration, Preiser, 411 U.S. at 500, 93 S.Ct. 1827, or would necessarily imply the invalidity of the conviction or sentence, Heck, 512 U.S. at 487, 114 S.Ct. 2364. See also Wilkinson v. Dotson, 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (explaining that Preiser and Heck bar a § 1983 claim only if that claim will either result in a “speedier release” from custody or “a judicial determination that necessarily implies the unlawfulness of the State’s custody”).[5]
A state parolee is “in custody” for purposes of the federal habeas statute, Jones v. Cunningham, 371 U.S. 236, 243, *1261 88 S.Ct. 373, 9 L.Ed.2d 285 (1963), and may challenge parole conditions imposed by a state correctional department through a habeas petition under 28 U.S.C. § 2241, Bagley v. Harvey, 718 F.2d 921, 922-23 (9th Cir.1983). But neither have we nor has the Supreme Court previously addressed whether, or in what circumstances, Heck’s implicit exception to § 1983 applies to such a claim. Here, we hold that Plaintiffs claims, which challenge just two parole conditions, do not fall within that exception, because a judgment enjoining enforcement of his GPS monitoring requirement and residency restrictions will neither affect the “fact or duration” of his parole nor “necessarily imply” the invalidity of his state-court conviction or sentence.
The only federal court of appeals to have decided how Heck applies to a nonphysical form of custody is the Seventh Circuit, which addressed the issue in Drollinger, 552 F.2d 1220. In dismissing a state probationer’s § 1983 claim challenging a condition of her probation, that court identified the crux of the issue: “Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred.” Id. at 1225. The same is true of parole. See Williams, 336 F.3d at 579 (“For parolees, ... the ‘conditions’ of parole are the confinement.”). But that does not mean that no distinction exists in the parole context between conditions of confinement and the fact of confinement. Not all parole conditions are essential to the “fact” of a parolee’s confinement; and a parolee’s challenge to parole, terms that are more analogous to “conditions” in the prison context will not speed the parolee’s release from parole.[6]
Here, Plaintiff does not challenge his status as a parolee or the duration of his parole, and even if he succeeds in this action,. nearly all of his parole conditions will remain in effect. Those conditions include drug and alcohol testing and treatment; psychiatric and behavioral counseling; limitations on travel, employment, association with certain individuals, patronage of certain businesses, and the use of motor vehicles; a curfew; numerous sex-offender registration requirements; a duty not to contact his robbery victim; and other restrictions. In these circumstances, we hold that his challenge to the two conditions does not threaten his “confinement” as a parolee. See Jones, 371 U.S. at 242^3, 83 S.Ct. 373 (explaining that the fact of a parolee’s custody consists of the cumulative effect of its conditions in “significantly confining] and restraining] his freedom”). Thus, even if the line between conditions of confinement and the fact thereof may be “blurred” in some cases, it is clear that Plaintiffs claims in this case do not seek “speedier release” from his confinement within the meaning of Preiser’s exception to § 1983.[7]
*1262 Moreover, because Plaintiff challenges only the discretionary decisions of the Department in imposing the GPS monitoring and residency restrictions, his success would not imply the invalidity of his conviction or sentence. The focus of the Supreme Court’s inquiry in Heck was whether a plaintiffs success on a § 1983 claim would call into question a state court’s judgment. See Heck, 512 U.S. at 484-86 & n. 4, 114 S.Ct. 2364 (relying on a common-law rule against “collateral attack on [a criminal] conviction through the vehicle of a civil suit” and determining that “ § 1983, which borrowed general tort principles, was not meant to permit such collateral attack” (internal quotation marks omitted)). We have held that a claim does not “necessarily imply” the invalidity of a conviction or sentence under Heck unless its success will “inevitably” call into question the state judgment that led to the plaintiffs custody. Osborne, 423 F.3d at 1055 (citing Dotson, 544 U.S. at 78-82, 125 S.Ct. 1242). Consistent with this view, the Seventh Circuit, in Drollinger, concluded that habeas relief was the exclusive relief available to challenge a probation condition imposed under Indiana law only after determining that, under state law, the challenged condition was part of the sentence imposed by the state court:
Our analysis of the Indiana statutes authorizing the granting of probation demonstrates [that] ... • [i]n placing a defendant on probation the trial court is required to impose conditions concerning the manner in which the defendant must conduct himself.... [The plaintiffs] challenge to the conditions of her probation is, therefore, an attack on the sentence of the trial court.
552 F.2d at 1224-25 (citations omitted).[8]
This case is distinguishable from Drollinger, though, because the conditions that Plaintiff challenges were not imposed as part of a court judgment. Rather, the Department imposed the GPS monitoring requirement pursuant to its discretionary authority under section 3010 of the Penal Code, and the Department imposed the residency restriction pursuant to the individualized assessment permitted by section 3000.5(b), as interpreted in Taylor, 147 Cal.Rptr.3d at 67-68. Even if successful, Plaintiffs claims will have no effect on his criminal sentence (a prison term that he has already served), or on the duration of his parole. Because Plaintiff challenges only the discretionary decisions of an administrative body, it is unlike the Indiana probation condition considered in Drollinger.[9] And because a judgment in Plaintiffs favor would neither shorten *1263 nor alter any sentence or judgment of a state court, it is unlike the administrative proceedings relating to good-time credits that were at issue in Preiser. Cf. Dotson, 544 U.S. at 82, 125 S.Ct. 1242 (holding that Preiser’s exception does not bar a § 1988 claim seeking “relief that will render invalid the state procedures” that relate to a prisoner’s custody but would not necessarily require early release from the prison sentence). Because his challenge to discretionary decisions of the Department will not affect his court-imposed prison term or result in release from parole, Plaintiffs possible success in this action would not “necessarily imply” the invalidity of any state-court judgment.[10] We need not and do not decide whether we would reach a different result had the Department merely implemented a parole condition that was required by statute as a direct consequence of a court’s judgment of conviction or sentence.
Furthermore, because Plaintiffs claim, had it been brought in habeas, likely would proceed under § 2241, see Bagley, 718 F.2d at 922-23, it is a type of habeas claim to which no court has previously extended Preiser’s implicit exception to the text of § 1983.[11] We do not rely on this technical distinction between § 2241 and § 2254 of the habeas statute in reaching our decision, but we note that the same consideration drives our reasoning: that Plaintiff does not challenge a judgment of conviction or a sentence. Compare 28 U.S.C. § 2254(a) (providing habeas relief for unlawful “custody pursuant to the judgment of a State court”) with id. § 2241(c) (providing relief for other forms of unlawful custody).[12] We need not and do not decide whether the availability of a § 2241 claim may ever bar a parolee from proceeding under § 1983. It is sufficient that, here, the same reasons that would place Plaintiffs claim within the scope of § 2241 also *1264 demonstrate that it is not “a collateral attack on [a] conviction [or sentence] through the vehicle of a civil suit,” Heck, 512 U.S. at 484, 114 S.Ct. 2364, and is therefore different in kind from the types of habeas claims for which the Supreme Court has determined that habeas relief is exclusive.
The dissent asserts that our decision will “muddle the clear line Heck and Dotson drew,” contrary to Skinner v. Switzer, — U.S.-, 131 S.Ct. 1289, 1298 n. 12, 179 L.Ed.2d 233 (2011). What the dissent neglects is that the “clear line” that the Supreme Court referred to in Skinner is the rule that Heck bars a § 1983 action only if the action’s success will necessarily imply the invalidity of a state court’s judgment. Id. at 1298-99 (permitting a prisoner’s § 1983 claim that sought potentially exonerating DNA testing because success would not “necessarily” imply the invalidity of the prisoner’s conviction); see also Nelson v. Campbell, 541 U.S. 637, 647, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004) (“[W]e were careful in Heck to stress the importance of the term ‘necessarily.’”). Here, we adhere to the Supreme Court’s “clear line.” Because his success in this action would not necessarily imply the invalidity of either his conviction or sentence, Plaintiff may proceed under § 1983.
In sum, we hold that a state parolee may challenge a condition of parole under § 1983 if his or her claim, if successful, would neither result in speedier release from parole nor imply, either directly or indirectly, the invalidity of the criminal judgments underlying that parole term. Because Plaintiff challenges just two parole conditions, which were imposed through a discretionary decision of the Department, his success would do neither, and Heck does not bar him from proceeding under § 1983.
REVERSED AND REMANDED.

. The California Supreme Court has granted the state's petition for review of that ruling. In re Taylor,-Cal.4th-, 150 Cal.Rptr.3d 566, 290 P.3d 1171 (2013).

. Although sections 3000.07(a) and 3004(b) of the Penal Code require the Department to impose a GPS monitoring condition for any parolee convicted of a “registerable sex offense” under section 290(c), that subsection lists only crimes under California law. Thus, Plaintiff’s condition, which relates to a conviction under Tennessee law, reflects an exercise of the Department’s discretion under section 3010.

. The Supreme Court rested this conclusion on its observation that "the language of the habeas statute is more specific, and the writ’s history makes clear that it traditionally 'has been accepted as the specific instrument to obtain release from [unlawful] confinement.' ” Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (alteration in original) (quoting Preiser, 411 U.S. at 486-87, 93 S.Ct. 1827).

. See also Preiser, 411 U.S. at 499, 93 S.Ct. 1827 (noting that habeas and § 1983 may provide alternative means to challenge prison conditions); Skinner v. Switzer,-U.S.-, 131 S.Ct. 1289, 1299, 179 L.Ed.2d 233 (2011) (raising, without deciding, the question whether "habeas [is] the sole remedy, or even an available one,” for certain types of claims).

.We discern litde, if any, disagreement between our and the dissent’s understandings of these governing principles. The dissent discusses the facts of Dotson in some detail, but we do not find those facts particularly relevant to this case. In Dotson, the plaintiffs were prisoners who sought, in a § 1983 action, relief that would have entitled them to a new parole hearing. They did not challenge any parole conditions that might, accompany their eventual release from prison.

. Indeed, a contrary view would lead to an arbitrary incongruity in the scope of available remedies: Prisoners would have two potential means to challenge aspects of their custody, whereas parolees would have only one. We see no need to allow the Preiser exception to swallow the rule that § 1983’s broad text provides a remedy for unlawful conditions of confinement.

. We need not and do not decide whether we would reach a different result were Plaintiff challenging all or a substantial portion of his parole conditions. The dissent declares our holding "unworkable” because a parolee’s challenge to 5, 7, or more parole conditions arguably could amount to a challenge to the fact of his or her parole itself. Like the dissent, we eschew a numerical approach, and we do not rely on the number of condi *1262 tions challenged to reach our holding. We merely note that Plaintiffs challenge is quite narrow and is focused on the nature of specific conditions of parole, rather than on his parole’s existence or its duration.

. Drollinger was decided before the Supreme Court issued Heck, so the Seventh Circuit'did ‘ not have the benefit of that later decision, which explained Preiser in light of a policy of preventing implicit collateral attack on state criminal judgments. But the Seventh Circuit limited its holding to conditions that, under state law, are part of the sentencing court’s judgment. Thus, Drollinger is consistent with Heck.

. The Seventh Circuit’s statement in Williams that Preiser probably barred a § 1983 challenge to numerous parole conditions is distinguishable. In Williams, the court noted that, because the plaintiff was released on parole before serving her full prison sentence, her challenge amounted to "a collateral attack while on parole” to her "unexpired sentences.” 336 F.3d at 579. Here, by contrast, Plaintiff has completed his prison term, and he does not challenge his parole itself.

. The dissent interprets California law, as we do, to delegate to the Department the discretionary- authority to choose and impose parole conditions. Dissent at 1265. See also Kevin R. v. Superior Court, 191 Cal.App.4th 676, 120 Cal.Rptr.3d 549, 554 (2010) ("The Board has expansive authority to impose any parole conditions deemed proper.”). Unlike us, though, the dissent concludes that, in challenging those discretionarity selected parole conditions, Plaintiff "is challenging a statutorily-mandated component of his sentence.” Dissent at 1266. We do not agree that such a conclusion follows from California’s delegation to the Department of discretionary authority to determine parole conditions.

. Generally, decisions in which courts have applied Preiser to bar a § 1983 claim have specifically noted the applicability of 28 U.S.C. § 2254. See, e.g., Heck, 512 U.S. at 480, 114 S.Ct. 2364 ("This case lies at the intersection of ... 42 U.S.C. § 1983[] and ,..28 U.S.C. § 2254.”); Preiser, 411 U.S. at 477, 93 S.Ct. 1827 (”[T]he federal habeas corpus statute, 28 U.S.C. § 2254, clearly provides a specific federal remedy.”); Osborne, 423 F.3d at 1053 (noting that the claim at issue was cognizable under § 2254); Ramirez v. Galaza, 334 F.3d 850, 854 (9th Cir.2003) (same); Neal v. Shimoda, 131 F.3d 818, 823 (9th Cir.1997) (same); Fierro v. Gomez, 77 F.3d 301, 304 (9th Cir.1996) (same); see also McQuillion v. Schwarzenegger, 369 F.3d 1091, 1094 (9th Cir.2004) (noting the plaintiff’s concurrent § 2254 habeas action).

.We have drawn a similar distinction between habeas claims by federal prisoners against federal parole determinations and those that challenge the original sentence. See Izsak v. Sigler, 604 F.2d 1205, 1206 n. 1 (9th Cir.1979) ("Habeas corpus, an attack on the legality of incarceration and not a collateral attack on judgment, is the proper vehicle for attacking Parole Commission action. Andrino v. United States Board of Parole, 550 F.2d 519 (9th Cir.1977) [(per curiam)], A collateral attack on the sentence imposed brought under 28 U.S.C. § 2255 will not lie.”); Andrino, 550 F.2d at 520 (holding that a habeas petition under § 2241 is the appropriate vehicle for such attacks).